1  JOSEPH P. RUSSONIELLO  (CA 44332)
   United States Attorney

2  BRIAN J. STRETCH (CABN 163973)
3  Chief, Criminal Division

4  S. WAQAR HASIB (CABN 234818)
   Assistant U.S. Attorney

5
   450 Golden Gate Ave (11th Floor)
6  San Francisco, CA 94102
   Telephone: (415) 436-7359
7  Facsimile: (415) 436-7234

8  Attorneys for the United States

**FILED**

JUL 2 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12  UNITED STATES OF AMERICA,        )    CRIMINAL NO.  3-08-70459-ME
                                     )
13       V.                          )
                                     )    NOTICE OF PROCEEDINGS ON
14                                   )    OUT-OF-DISTRICT CRIMINAL
    CHRISTOPHER TOBIN                )    CHARGES PURSUANT TO RULES
15                                   )    5(c)(2) AND (3) OF THE FEDERAL RULES
                                     )    OF CRIMINAL PROCEDURE
16                                   )

17       Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal

18  Procedure that on July 21, 2008, the above-named defendant was arrested  based upon an arrest

19  warrant (copy attached) issued upon an indictment (copy attached) pending in the Middle District

20  of Florida, case number 6:08-CR-118-ORL-22KRS.  In that case, the defendant is charged with

21  one count of conspiring to dispense and distribute Schedule III and IV controlled substances, in

22  violation of 21U.S.C. § 846 (Count 1 in the indictment), and two counts of distributing Schedule

23  III and IV controlled substances, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts

24  3 and 11 in the indictment).

25                                   Respectfully Submitted,
                                     JOSEPH P. RUSSONIELLO
26                                   United States Attorney

27  Date: July 22, 2008
                                     S. WAQAR HASIB
28                                   Assistant United States Attorney

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

JUDE LACOUR
JEFFREY LACOUR
HUDSEN SMITH
CHRISTOPHER TOBIN
AKHIL BARANWAL
ALEXIS ROMAN TORRES
ANDREW DESONIA
MARGARET MCINTOSH
  a/k/a Margaret Fulmore
ABEL LAU
JAMES PICKENS
GEUNNET CHEBSSI

CASE NO. 6:08-cr- 118-ORL-22KRS
21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1957
21 U.S.C. § 853 - Forfeiture
18 U.S.C. § 982(a)(1) - Forfeiture

## INDICTMENT

The Grand Jury Charges:

## Introduction

At all times material to this Indictment:

## The Organization

1.    Defendant **JUDE LACOUR** owned and operated Jive Network, Inc.,

formerly known as CyberTech Systems, Inc., ("Jive Network"), a Florida corporation

located in Volusia County, Florida.  Defendant **JUDE LACOUR** was the Director,

President, Secretary and Treasurer of Jive Network, an organization that used the

Internet to distribute and dispense prescription drugs to customers unlawfully.  **JUDE**

**LACOUR** opened or caused the opening of bank accounts at Wachovia Bank, N.A., in

the name of Jive Network, Celestial Group, Inc., and Pill Network, Inc. (collectively "Jive

Network bank accounts") and deposited or caused to be deposited the proceeds of the prescription drug sales into the accounts.

2.  Jive Network sold controlled and non-controlled prescription drugs to customers located across the United States who had no prescriptions from a personal physician.

3.  Jive Network conducted these prescription drug sales through Internet websites that were either owned by or affiliated with Jive Network, including but not limited to: (a) cyberpills.com; (b) epharmacist.com; (c) pillstore.com; (d) pillvalue.com; (e) instantpills.com; (f) planetpills.com; (g) click for pills.com; and (h) pillnetwork.com.

4.  Jive Network also hired customer service representatives located at its office in Volusia County, Florida who took orders for controlled and non-controlled prescription drugs from customers over the telephone.

5.  Customers logged onto one of Jive Network's websites or affiliated websites or called Jive Network's customer service representatives and placed orders for controlled and non-controlled prescriptions drugs. The customers completed a short health history questionnaire and paid for the drugs by credit card or money order; Jive Network did not accept medical insurance. Jive Network did not verify the customers' identities and did not require the customers to submit any medical records during the ordering process.

6.  Jive Network recruited and paid licensed doctors and osteopaths located across the United States to review health questionnaire answers provided by customers

2

over the Internet or telephone and to approve customer orders solely on the basis of those answers.

7.    Jive Network provided Jive Network doctors passwords which they used to access a queue containing health questionnaires maintained on Jive Network's server in Volusia County, Florida. Jive Network doctors had no face-to-face contact with the customers, did not verify their identities or age, did not conduct any physical examinations or testing, did not review any medical records before approving "prescription" drug orders for the customers and often were not licensed in the states in which the customers resided. Jive Network doctors could reassign customer orders to other Jive Network doctors. Jive Network doctors had no pre-existing physician-patient relationship with any customer for whom the doctors approved "prescription" drug orders.

8.    Jive Network doctors approved and issued drug orders, not in the course of diagnosing and treating medical conditions, but to facilitate the distribution of drugs pre-selected by customers and for the doctor's own personal profit. Jive Network paid the doctors a fee for each questionnaire they reviewed. Jive Network doctors unlawfully approved and issued "prescription" drug orders outside the usual course of their professional practice and for no legitimate medical purpose. The "prescriptions" they issued for Jive Network customers were invalid.

9.    Jive Network recruited and paid licensed pharmacists located across the United States to fill "prescription" drug orders. Jive Network installed computers and printers in the pharmacies which linked to Jive Network's server in Volusia County, Florida. Jive Network pharmacists accessed a queue on Jive Network's website and

3

printed a sheet which included the "prescription" order for the controlled substance, the approving doctor's name, address and sometimes his/her electronic signature, and a Federal Express shipping label preprinted with the ordering customer's name and address.

10.     Jive Network pharmacists filled the orders and shipped the drugs to the customers throughout the United States via Federal Express. Jive Network pharmacists and their pharmacies often were not licensed in the states to which they shipped drugs. Jive Network pharmacists did not contact the customers and rarely contacted the Jive Network doctors who approved or purportedly approved the "prescription" drug orders.

11.     Jive Network pharmacists filled "prescription" drug orders which were not issued in the course of diagnosing and treating medical conditions, but to facilitate the sale of drugs pre-selected by customers and for the pharmacist's own personal profit. Jive Network paid the pharmacists a fee for each "prescription" drug order they filled, paid for the costs of the drugs and paid for the Federal Express shipping. Jive Network pharmacists unlawfully filled "prescription" drug orders which were issued outside the usual course of professional practice and for no legitimate medical purpose.

12.     During the period of the conspiracy, Jive Network received well over 500,000 customer orders for controlled substances and illegally generated revenue in excess of $77 million.

13.     Defendant **JEFFREY LACOUR,** Jude LaCour's father, was the Director of Operations at Jive Network. He was responsible for the day-to-day operations of Jive Network, including recruiting physicians and pharmacists to fulfill "prescription" drug

4

orders for Jive Network, and ordering and arranging for the delivery of prescription drugs to Jive Network pharmacies.

14.    Defendant **HUDSEN SMITH** was employed as the Pharmacy/Physician Director at Jive Network from in or about May 2004 through in or about April 2005. During this time period, he was responsible for recruiting physicians and pharmacists to approve and fulfill "prescription" drug orders for Jive Network, and ordering and arranging for the delivery of prescription drugs to Jive Network pharmacies.

15.    Defendant **CHRISTOPHER TOBIN** was a licensed medical doctor in North Carolina who approved "prescription" drug orders for Jive Network from in or about March 2002 through in or about April 2004.

16.    Defendant **AKHIL BARANWAL** was a licensed medical doctor in Georgia who approved "prescription" drug orders for Jive Network from in or about February 2004 through in or about March 2005.

17.    Defendant **ALEXIS ROMAN TORRES** was a licensed medical doctor in Puerto Rico who approved "prescription" drug orders for Jive Network from in or about May 2004 through in or about April 2005.

18.    Defendant **ANDREW DESONIA** was a licensed osteopath in Indiana who approved "prescription" drug orders for Jive Network from in or about July 2004 through in or about April 2005.

19.    Defendant **MARGARET MCINTOSH, a/k/a Margaret Fulmore,** was a licensed medical doctor in North Carolina who approved "prescription drug" orders for Jive Network from in or about August 2004 through in or about April 2005.

20.    Defendant **ABEL LAU** was a licensed medical doctor in Oklahoma who approved "prescription" drug orders for Jive Network from in or about August 2004 through in or about April 2005.

21.    Defendant **JAMES PICKENS** was a licensed medical doctor in Utah who approved "prescription" drug orders for Jive Network from in or about July 2004 through in or about April 2005.

22.    Defendant **JUDE LACOUR** was the director of Excelsior Pharmaceutical, Inc. (Excelsior), a company which he previously incorporated in 2001. From in or about May 2003 through in or about April 2004, Excelsior fulfilled "prescription" drug orders for Jive Network. Excelsior was located in the same building as Jive Network in Volusia County, Florida. In or about February 2004, **JEFFREY LACOUR** became the president of Excelsior.

23.    Defendant **GEUNNET CHEBSSI** was a licensed pharmacist in Maryland who owned and operated Family Health Pharmacy in Maryland. **CHEBBSI** fulfilled "prescription" drug orders for Jive Network from in or about June 2004 through in or about March 2005.

24.    LaCour Medical, Inc. was an entity controlled by **JEFFREY LACOUR**, and was the entity through which he received money from Jive Network.

### The Controlled Substances Act

25.    The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. 21 U.S.C. §§ 801-971. Under the CSA, various prescription drugs were also controlled substances.

6

26.     The CSA scheduled controlled substances according to their potential for

abuse or dependence, their accepted medical use, and their accepted safety for use

under medical supervision. 21 U.S.C. § 812(b). There were five Schedules of

Controlled Substances, Schedules I, II, III, IV and V.

27.     Under the CSA, Schedule III Controlled Substances were defined as

having (1) a potential for abuse less than the drugs or other substances in Schedules I

and II; (2) a currently accepted medical use in treatment in the United States; and (3) a

potential to lead to moderate or low physical dependence or high psychological

dependence if abused. 21 U.S.C. §§ 812(b)(3). Jive Network sold and distributed the

following Schedule III Controlled Substances categorized as stimulants:

phendimetrazine, Bontril SR®, and Didrex®.

28.     Under the CSA, Schedule IV Controlled Substances were defined as

having (1) a low potential for abuse relative to the drugs or other substances in

Schedule III; (2) a currently accepted medical use in treatment in the United States; and

(3) a potential to lead to limited physical dependence or psychological dependence if

abused relative to the drugs or other substances in Schedule III. 21 U.S.C. § 812(b)(4).

Jive Network sold and distributed the following Schedule IV Controlled Substances: the

stimulants phentermine, Adipex-P®, Ionamin®, sibutramine hydrochloride, Meridia®,

diethylproprion, Tenuate®; and the depressants zolpidem tartrate, Ambien®, zaleplon,

Sonata®, Valium, Xanax, Diazepam, and Alprazolam.

29.     Controlled substances and non-controlled prescription drugs may be

distributed and dispensed lawfully by means of a prescription, if that prescription is

7

issued for a legitimate medical purpose by a practitioner acting in the usual course of professional practice. 21 C.F.R. § 1306.04(a).

30.     The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. 21 C.F.R. §§ 1306.04(a), 1306.05(a). For a prescription for a controlled substance to be effective, it "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). "An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent" of the Controlled Substances Act. 21 C.F.R. § 1306.04(a). Thus, "[t]he person knowingly filing such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law related to controlled substances." 21 C.F.R. § 1306.04(a).

31.     A pharmacist may dispense Schedule III and Schedule IV controlled substances only: (1) pursuant to a written prescription signed by a practitioner; (2) a facsimile of a written signed prescription transmitted by the practitioner or the practitioner's agent to the pharmacy; or (3) pursuant to an oral prescription made by an individual practitioner and promptly reduced to writing by the pharmacist. 21 C.F.R. § 1306.21(a).

8

## COUNT ONE
### (Drug Conspiracy)

32.    Paragraphs 1 through 31 are hereby realleged and incorporated as if fully set forth herein.

33.    Beginning on a date unknown to the Grand Jury, but from at least as early as in or about 2002 and continuing through on or about April 18, 2005, in Volusia County, Florida, in the Middle District of Florida, and elsewhere,

**JUDE LACOUR
JEFFREY LACOUR
HUDSEN SMITH
CHRISTOPHER TOBIN
AKHIL BARANWAL
ALEXIS ROMAN TORRES
ANDREW DESONIA
MARGARET MCINTOSH
a/k/a Margaret Fulmore
ABEL LAU
JAMES PICKENS
and
GEUNNET CHEBSSI**

the defendants herein, did knowingly and willfully, combine, conspire, confederate and agree with others, both known and unknown to the Grand Jury, to commit the following offenses:

   a.    to knowingly and intentionally distribute and dispense and cause to be distributed and dispensed Controlled III substances, including but not limited to, quantities of phendimetrazine, Bontril SR®, and Didrex®, other than for a legitimate medical purpose and not in the usual course of professional practice, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D);

   b.    to knowingly and intentionally distribute and dispense and cause to be distributed and dispensed Controlled IV substances, including but not limited to, quantities of

9

phentermine, Adipex-P®, Ionamin®, sibutramine
hydrochloride, Meridia®, diethylproprion hydrochloride,
Tenuate®, zolpidem tartrate, Ambien®, zaleplon, and
Sonata®, other than for a legitimate medical purpose and
not in the usual course of professional practice, in violation
of Title 21, United States Code, Sections 841(a)(1) and 841
(b)(2); and

c.    to knowingly and intentionally use a communication facility in
committing and in causing and facilitating the commission of
the distribution and dispensing of Schedule III and IV
Controlled Substances other than for a legitimate medical
purpose and not in the usual course of professional practice,
in violation of Title 21, United States Code, Sections
841(a)(1), 841(b)(1)(D), 841(b)(2), and 843(b).

## Object of the Conspiracy

34.    It was the object of the conspiracy for the conspirators to obtain

substantial revenues and profits by illegally distributing and dispensing controlled

substances using orders purporting to be prescriptions that were not issued for a

legitimate medical purpose by individual practitioners acting in the usual course of

professional medical practice.

## Manner and Means of the Conspiracy

It was part of the conspiracy that defendants would and did:

35.    Distribute and dispense prescription controlled substances using the

Internet to individuals who did not have legitimate, valid prescriptions, through Jive

Network and its affiliated Internet websites;

36.    Receive online or telephonic orders from Internet customers for controlled

substances;

10

37.     Purchase controlled substances from pharmaceutical distributors or manufacturers;

38.     Arrange for the delivery of controlled substances to pharmacies located throughout the United States for distribution to Internet customers;

39.     Distribute and dispense controlled substances to Internet customers without verifying their identities, their personal information, or their health histories;

40.     Distribute and dispense controlled substances to Internet customers without verifying legitimate medical purposes;

41.     Distribute and dispense controlled substances to Internet customers without verifying valid doctor/patient relationships;

42.     Distribute and dispense controlled substances to Internet customers who used alias or fictitious names;

43.     Distribute and dispense controlled substances to Internet customers who did not have legitimate and valid prescriptions;

44.     Reassign customer orders for controlled substances from one Jive Network doctor to another Jive Network doctor for approval;

45.     Perform and cause to be performed acts and statements designed to circumvent Federal and State laws governing the distribution and dispensing of controlled substances pursuant to valid prescriptions;

46.     Distribute controlled substances in violation of state and federal requirements to maintain records;

47.     Pay for and arrange for the delivery of controlled substances through Federal Express;

11

48.    Receive wire or electronic transfers of funds from various merchant accounts as payments for the Internet customers' drug orders;

49.    Receive money orders as payments for the Internet customers' drug orders;

50.    Deposit proceeds from the Internet drug orders into Jive Network bank accounts at Wachovia Bank, a federally insured financial institution;

51.    Wire transfer or cause to be wire transferred funds from Jive Network Wachovia Bank accounts to co-conspirators for reviewing questionnaires, issuing invalid prescriptions for controlled substances, dispensing controlled substances pursuant to invalid prescriptions, and distributing controlled substances to Internet customers who had no valid prescriptions; and,

52.    Perform and cause to be performed acts and statements designed to hide and conceal the purpose of the conspiracy and the acts committed in furtherance thereof.

### Overt Acts

53.    From in or about 2002 through in or about April 18, 2005, **JUDE LACOUR** operated Jive Network, Inc., to distribute controlled substances to Internet customers who had no valid prescriptions, and was registered as Director, President, Secretary, Treasurer.

54.    In or about 2003, **JUDE LACOUR** operated Excelsior Pharmaceutical, Inc., in Volusia County, Florida to distribute controlled substances to Jive Network Internet customers who did not have a valid prescription.

12

55.    In or about February 2003, **JUDE LACOUR** opened or caused to be opened Wachovia Bank account 2000015197809 (#7809) in the name of Jive Network.

56.    In or about January 2004, **JEFFREY LACOUR** operated and became President of Excelsior Pharmaceutical, Inc.

57.    From in or about April 2003 through in or about January 2004, Excelsior Pharmaceutical, Inc., fulfilled about 4,591 Internet customer orders for Schedule III controlled substances and about 35,226 Internet customer orders for Schedule IV controlled substances and caused the distribution of about 356,160 dosage units of Schedule III controlled substances and 2,207,735 dosage units of Schedule IV controlled substances.

58.    From in or about March 2002 through in or about March 2004, defendant **CHRISTOPHER TOBIN** approved about 5,080 Internet customer orders for Schedule III controlled substances and about 35,548 Internet customer orders for Schedule IV controlled substances, and caused the distribution of about 378,619 dosage units of Schedule III controlled substances and 2,408,907 dosage units of Schedule IV controlled substances.

59.    From in or about March 2002 through in or about March 2004, defendant **JUDE LACOUR** wire transferred or caused the wire transfers of a total of about $331,680.00 from Jive Network's Wachovia Bank accounts to a bank account controlled by defendant **CHRISTOPHER TOBIN**.

60.    From in or about February 2004 through in or about March 2005, defendant **AKHIL BARANWAL** approved about 7,125 Internet customer orders for

13

Schedule III controlled substances and about 54,050 internet customer orders for Schedule IV controlled substances, and caused the distribution of about 569,494 dosage units of Schedule III controlled substances and 4,150,860 dosage units of Schedule IV controlled substances.

61.     From in or about March 2, 2004, through in or about November 2004, defendant **JUDE LACOUR** mailed checks and wire transferred or caused the mailing of checks and wire transfers of a total of $383,585.00 from Jive Network's Wachovia Bank accounts to bank accounts controlled by defendant **AKHIL BARANWAL**.

62.     On or about May 25, 2004, defendant **HUDSEN SMITH** recruited defendant **ALEXIS ROMAN TORRES** to approve orders for Jive Network, writing "our doctors make between $5,000.00 and $10,000.00 per month reviewing prescriptions for us."

63.     From in or about May 2004 through in or about April 2005, defendant **ALEXIS ROMAN TORRES** approved about 10,108 Internet customer orders for Schedule III controlled substances and about 90,814 Internet customer orders for Schedule IV controlled substances, and caused the distribution of about 811,080 dosage units of Schedule III controlled substances and 7,096,650 dosage units of Schedule IV controlled substances.

64.     From in or about June 2004 through in or about April 2005, defendant **JUDE LACOUR** wire transferred or caused the wire transfers of a total of about $239,940.00 from Jive Network's Wachovia Bank accounts to bank accounts controlled by defendant **ALEXIS ROMAN TORRES**.

**14**

65.    On or about May 27, 2004, defendant **HUDSEN SMITH** recruited defendant **ANDREW DESONIA** to approve orders for Jive Network, writing "our doctors make between $5,000.00 and $10,000.00 per month reviewing prescriptions for us."

66.    From in or about June 2004 through in or about April 2005, defendant **ANDREW DESONIA** approved about 4,657 internet customer orders for Schedule III controlled substances and about 39,245 Internet customer orders for Schedule IV controlled substances, and caused the distribution of about 374,070 dosage units of Schedule III controlled substances and 3,058,260 dosage units of Schedule IV controlled substances.

67.    From in or about June 2004 through in or about April 2005, defendant **JUDE LACOUR** wire transferred or caused the wire transfers of a total of about $113,745.00 from Jive Network's Wachovia Bank accounts to bank accounts controlled by defendant **ANDREW DESONIA**.

68.    In or about July 2004, defendant **JEFFREY LACOUR** recruited defendant **MARGARET MCINTOSH, a/k/a Margaret Fulmore,** to approve orders for Jive Network.

69.    From in or about August 2004 through in or about April 2005, defendant **MARGARET MCINTOSH, a/k/a Margaret Fulmore,** approved about 3,163 Internet customer orders for Schedule III controlled substances and about 26,009 Internet customer orders for Schedule IV controlled substances, and caused the distribution of about 255,030 dosage units of Schedule III controlled substances and 2,038,770 dosage units of Schedule IV controlled substances.

15

70.  From in or about August 2004 through in or about April 2005, defendant **JUDE LACOUR** wire transferred or caused the wire transfers of a total of about $82,906.00 from Jive Network's Wachovia Bank accounts to a bank account controlled by defendant **MARGARET MCINTOSH, a/k/a Margaret Fulmore.**

71.  From in or about August 2004 through in or about April 2005, defendant **ABEL LAU** approved about 19 internet customer orders for Schedule III controlled substances and about 18,710 Internet customer orders for Schedule IV controlled substances, and caused the distribution of about 1,410 dosage units of Schedule III controlled substances and 1,459,230 dosage units of Schedule IV controlled substances.

72.  From in or about September 2004 through in or about April 2005, defendant **JUDE LACOUR** wire transferred or caused the wire transfers of a total of about $53,913.00 from Jive Network's Wachovia Bank accounts to bank accounts controlled by defendant **ABEL LAU.**

73.  From in or about July 2004 through in or about April 2005, defendant **JAMES PICKENS** approved about 4,154 Internet customer orders for Schedule III controlled substances and about 39,422 Internet customer orders for Schedule IV controlled substances, and caused the distribution of about 330,630 dosage units of Schedule III controlled substances and 3,071,160 dosage units of Schedule IV controlled substances.

74.  From in or about July 2004 through in or about April 2005, defendant **JUDE LACOUR** wire transferred or caused the wire transfers of a total of about

16

$128,397.00 from Jive Network's Wachovia Bank accounts to bank accounts controlled by defendant **JAMES PICKENS.**

75.    From in or about June 2004 through in or about March 2005, defendant **GEUNNET CHEBSSI** fulfilled about 283 Internet customer orders for Schedule III controlled substances and about 21,483 Internet customer orders for Schedule IV controlled substances, and caused the distribution of about 23,160 dosage units of Schedule III controlled substances and 1,706,190 dosage units of Schedule IV controlled substances.

76.    From in or about August 2004 through in or about March 2005, defendant **JUDE LACOUR** wire transferred or caused the wire transfers of about $433,175.00 from Jive Network's Wachovia Bank account to a bank account controlled by defendant **GEUNNET CHEBSSI.**

77.    From in or about 2002 through in or about April 2005, defendants distributed and dispensed and caused to be distributed and dispensed approximately 4.8 million dosage units of Schedule III controlled substances and approximately 39.2 million dosage units of Schedule IV controlled substances to Internet customers who had no valid prescriptions.

All in violation of Title 21, United States Code, Section 846.

## COUNTS TWO THROUGH THIRTY-THREE
### (Distributions of Controlled Substances)

78.    Paragraphs 1 through 31 are hereby realleged and incorporated as if fully set forth herein.

17

79.    On or about the dates alleged below, in Volusia County, Florida, in the

Middle District of Florida, and elsewhere, the defendants, aiding and abetting each

other, knowingly and intentionally distributed and dispensed, and caused to be

distributed and dispensed, quantities of Schedule III and Schedule IV Controlled

Substances, as alleged below, other than for a legitimate medical purpose and not in

the usual course of professional practice, each such instance being a separate count of

the Indictment:

| Count | Date | Defendants | Controlled Substance | Schedule | Customer and Location |
|-------|------|-----------|---------------------|----------|----------------------|
| Two | 5/29/03 | Jude LaCour | 90 Didrex Tablets (50 mg) | III | "J.H." a/k/a "S.E." in Northridge, CA |
| Three | 6/2/03 | Jude LaCour Christopher Tobin | 90 Phendimetra-zine Tablets (35 mg) | III | "L.P." a/k/a "K.P." in Morgan City, LA |
| Four | 6/4/03 | Jude LaCour | 90 Bontril Tablets (105 mg) | IV | "J.T." a/k/a "D.T." in Katy, Texas |
| Five | 7/1/03 | Jude LaCour | 90 Phentermine Tablets (37.5 mg) | IV | "T.R." in New Jersey |
| Six | 7/18/03 | Jude LaCour | 90 Didrex Tablets (50 mg) | IV | "G.D." a/k/a "S.E." in Northridge, CA |
| Seven | 7/22/03 | Jude LaCour | 90 Phentermine Tablets (37.5 mg) | IV | "T.R." in New Jersey |
| Eight | 7/28/03 | Jude LaCour | 90 Didrex Tablets (50 mg) | III | "S.E." in Northridge, CA |

18

| Nine | 8/14/03 | Jude LaCour | 60 Phentermine Tablets (37.5 mg) | IV | "T.R." in New Jersey |
|---|---|---|---|---|---|
| Ten | 9/24/03 | Jude LaCour | 90 Phentermine Tablets (37.5 mg) | IV | "T.R." in New Jersey |
| Eleven | 10/6/03 | Jude LaCour Christopher Tobin | 90 Phentermine Tablets (37.5 mg) | IV | "T.R." in New Jersey |
| Twelve | 10/13/03 | Jude LaCour | 90 Didrex Tablets (50 mg) | III | "G.D." a/k/a "S.E." in Northridge, CA |
| Thirteen | 10/17/03 | Jude LaCour | 90 Phentermine Tablets (37.5 mg) | IV | "T.R." in New Jersey |
| Fourteen | 6/5/04 | Jude LaCour Jeffrey LaCour Hudsen Smith Akhil Baranwal | 60 Adipex-P Tablets (37.5 mg) | IV | "M.T." in Tampa, Florida |
| Fifteen | 7/22/04 | Jude LaCour Jeffrey LaCour Hudsen Smith | 30 Phentermine Tablets (15 mg) | IV | "Patricia Bowman" in Pittsburgh, PA |
| Sixteen | 8/18/04 | Jude LaCour Jeffrey LaCour Hudsen Smith Akhil Baranwal | 90 Phentermine Tablets (30 mg) | IV | "K.B." in Arlington, TX |
| Seventeen | 9/13/04 | Jude LaCour Jeffrey LaCour Hudsen Smith Akhil Baranwal | 90 Phendimetra-zine Tablets (35 mg) | III | "L.P." in Morgan City, LA |
| Eighteen | 9/22/04 | Jude LaCour Jeffrey LaCour Margaret McIntosh, a/k/a Margaret Fulmore | 90 Phendimetra-zine Tablets (35 mg) | III | "K.W." in San Ramon, California |

19

| Nineteen | 10/8/04 | Jude LaCour<br>Jeffrey LaCour<br>Hudsen Smith<br>Andrew DeSonia<br>Guenett Chebssi | 30 Phentermine Tablets (30 mg) | IV | "E.K." in Indio, CA |
|---|---|---|---|---|---|
| Twenty | 10/7/04 | Jude LaCour<br>Jeffrey LaCour<br>Hudsen Smith | 90 Phendimetra-zine Tablets (35 mg) | III | "L.P." in Morgan City, LA |
| Twenty-One | 11/5/04 | Jude LaCour<br>Hudsen Smith<br>Margaret McIntosh, a/k/a Margaret Fulmore | 90 Phendimetra-zine Tablets (35 mg) | III | "L.P." a/k/a "S.W." in Morgan City, LA |
| Twenty-Two | 11/7/04 | Jude LaCour<br>Hudsen Smith<br>James Pickens | 90 Didrex Tablets (50 mg) | III | "J.M." in Augusta, Georgia |
| Twenty-Three | 11/30/04 | Jude LaCour<br>Hudsen Smith<br>Alexis Roman Torres | 90 Adipex-P Tablets (37.5 mg) | IV | "M.T." c/o "J.K." in Kansas City, Mo. |
| Twenty-Four | 12/6/04 | Jude LaCour,<br>Hudsen Smith<br>Alexis Roman Torres | 60 Phentermine Tablets (30 mg) | IV | "Luis Batalla" in Covington, LA |
| Twenty-Five | 12/9/04 | Jude LaCour<br>Alexis Roman Torres | 90 Phendimetra-zine Tablets (35 mg) | III | "L.P." in Morgan City, LA" |
| Twenty-Six | 2/14/05 | Jude LaCour<br>Hudsen Smith<br>Margaret McIntosh, a/k/a Margaret Fulmore | 90 Phendimetra-zine Tablets (105 mg) | III | "Daisy Peronis-Andrews" in Katy, TX |
| Twenty-Seven | 4/7/05 | Jude LaCour<br>Hudsen Smith<br>Andrew DeSonia | 90 Phentermine Tablets (37.5 mg) | IV | "Ronald Jones" in Mandeville, LA |

20

| Twenty-Eight | 4/8/05 | Jude LaCour<br>Hudsen Smith<br>Alexis Roman<br>Torres | 90<br>Phentermine<br>Tablets (37.5<br>mg) | IV | "Joe Kentucky-Hatfield" in<br>Florham Park, NJ |
|---|---|---|---|---|---|
| Twenty-Nine | 4/8/05 | Jude LaCour<br>Hudsen Smith<br>Alexis Roman<br>Torres | 60<br>Phentermine<br>Tablets (15<br>mg) | IV | "Glenn Logan" in<br>Franklin, TN |
| Thirty | 4/11/05 | Jude LaCour<br>Hudsen Smith<br>Alexis Roman<br>Torres | 90<br>Phentermine<br>Tablets (30<br>mg) | IV | "K.B" in Arlington,<br>TX |
| Thirty-One | 4/11/05 | Jude LaCour<br>Hudsen Smith<br>Alexis Roman<br>Torres | 60<br>Phentermine<br>Tablets (30<br>mg) | IV | "Greg Goggins" in<br>Laurel, MD |
| Thirty-Two | 4/11/05 | Jude LaCour<br>Hudsen Smith<br>Alexis Roman<br>Torres | 90<br>Phentermine<br>Tablets (30<br>mg) | IV | "Brittany O'Shea"<br>in Fuquay Varina,<br>NC |
| Thirty-Three | 4/14/05 | Jude LaCour<br>Hudsen Smith<br>Abel Lau | 60<br>Phentermine<br>Tablets (30<br>mg) | IV | "Karin Campbell"<br>in Jersey City, NJ |

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18,

United States Code, Section 2.

## COUNT THIRTY-FOUR
### (Money Laundering Conspiracy)

80.     Paragraphs 1 through 31 are hereby realleged and incorporated as if fully

set forth herein.

81.     Beginning on a date unknown to the Grand Jury, but at least from in or

about January 2004, through on or about April 18, 2005, in Volusia County, Florida, in

the Middle District of Florida, and elsewhere,

21

**JUDE LACOUR**
**and**
**JEFFREY LACOUR**

the defendants herein, did knowingly and willfully combine, conspire, confederate and

agree with others, both known and unknown to the Grand Jury, to commit the following

offenses:

a.    To conduct and attempt to conduct financial transactions
affecting interstate and foreign commerce which involved the
proceeds of specified unlawful activity, that is, the
distribution and dispensing of, and conspiracy to distribute
and dispense, controlled substances, in violation of Title 21,
United States Code, Sections 841(a)(1) and 846, knowing
that the property involved in the financial transactions
represented the proceeds of unlawful activity, with the intent
to promote the carrying on of the specified unlawful activity,
in violation of Title 18, United States Code, Section
1956(a)(1)(A)(i); and,

b.    To engage in and attempt to engage in monetary
transactions affecting interstate and foreign commerce, in
criminally derived property of a value greater than $10,000,
which property was in fact derived from a specified unlawful
activity, that is, the distribution and dispensing of, and
conspiracy to distribute and dispense, controlled
substances, in violation of Title 21, United States Code,
Sections 841(a)(1) and 846, in violation of Title 18, United
States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS THIRTY-FIVE THROUGH FIFTY-FIVE
**(Promotional Money Laundering)**

82.    Paragraphs 1 through 31 are hereby realleged and incorporated as if fully

set forth herein.

83.    On or about the dates alleged below, in Volusia County, Florida, in the

Middle District of Florida, and elsewhere,

22

## JUDE LACOUR

the defendant herein, knowing that the property involved in the financial transactions

represented the proceeds of some form of unlawful activity, did cause to be conducted

and attempted to conduct, a financial transaction affecting interstate and foreign

commerce, as described below, which financial transaction in fact involved the

proceeds of specified unlawful activity, that is, the distribution and dispensing of, and

conspiracy to distribute and dispense, controlled substances, in violation of Title 21,

United States Code, Sections 841(a)(1) and 846, and with the intent to promote the

carrying on of such specified unlawful activity:

| Count | Date | Amount | Financial Transaction |
|-------|------|--------|------------------------|
| Thirty-Five | 11/14/03 | $2,063.00 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Christopher Tobin's Wachovia Bank account in South Carolina |
| Thirty-Six | 5/25/04 | $36,034.97 | Check # 4291 drawn on Jive Network's Wachovia Bank account (#7809) in Florida payable to Federal Express |
| Thirty-Seven | 5/25/04 | $25,849.24 | Check # 4292 drawn on Jive Network's Wachovia Bank account (#7809) in Florida payable to Federal Express |
| Thirty-Eight | 6/1/04 | $11,381.45 | Check # 4306 drawn on Jive Network's Wachovia Bank account (#7809) in Florida payable to Federal Express |
| Thirty-Nine | 6/4/04 | $26,617.00 | Check # 4327 drawn on Jive Network's Wachovia Bank account (#7809) in Florida payable to Federal Express |
| Forty | 7/2/04 | $18,208.00 | Check # 4490 drawn on Jive Network's Wachovia Bank account (#7809) in Florida payable to Anda Generics for drugs delivered to Midland Pharmacy in New Jersey |

| Forty-One | 7/6/04 | $19,667.50 | Check # 4491 drawn on Jive Network's Wachovia Bank account (#7809) in Florida payable to Anda Generics for drugs delivered to Midland Pharmacy in New Jersey |
|---|---|---|---|
| Forty-Two | 8/16/04 | $3,448.92 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Andrew DeSonia's Fifth Third bank account in Iowa |
| Forty-Three | 8/16/04 | $3,298.86 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to James Pickens' Wells Fargo account in California |
| Forty-Four | 8/16/04 | $10,275.00 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Akhil Baranwal's account in Washington, D.C. |
| Forty-Five | 8/16/04 | $4,528.86 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Alexis Roman Torres' Banco Popular account in Puerto Rico |
| Forty-Six | 9/16/04 | $159,475.45 | Wire transfer from Jive Network's Wachovia Bank account (#7809) to Allscripts drug orders |
| Forty-Seven | 9/22/04 | $179,214.42 | Wire transfer from Jive Network's Wachovia Bank account (#7809) to Allscripts for drug orders |
| Forty-Eight | 9/22/04 | $14,906.97 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Family Health Pharmacy's SunTrust Bank account in Georgia |
| Forty-Nine | 9/24/04 | $8,975.68 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Family Health Pharmacy's SunTrust Bank account in Georgia |
| Fifty | 2/22/05 | $86,684.00 | Wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Allscripts for drug orders |

| Fifty-One | 3/04/05 | $173,368.00 | Wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Allscripts for drug orders |
| Fifty-Two | 3/7/05 | $3,131.58 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Abel Lau's bank account |
| Fifty-Three | 3/14/05 | $4,368.96 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Margaret McIntosh, a/k/a Margaret Fulmore's bank account |
| Fifty-Four | 3/14/05 | $43,566.80 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Federal Express |
| Fifty-Five | 3/25/05 | $42,483.00 | Outgoing wire transfer from Jive Network's Wachovia Bank account (#7809) in Florida to Federal Express |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNTS FIFTY-SIX THROUGH SEVENTY-THREE
### (Money Laundering)

84.     Paragraphs 1 through 31 are hereby realleged and incorporated as if fully set forth herein.

85.     On or about the dates set forth below, in Volusia County, Florida, in the Middle District of Florida, and elsewhere,

**JUDE LACOUR
and
JEFFREY LACOUR**

the defendants herein, aiding and abetting each other, did knowingly engage and attempt to engage in a monetary transaction, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, which property was in fact derived from a specified unlawful activity, that is, the distribution

25

and dispensing of, and conspiracy to distribute and dispense, controlled substances, in

violation of Title 21, United States Code, Sections 841(a)(1) and 846:

| COUNT | DEFENDANT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|-----------|------|--------|------------------------|
| Fifty-Six | Jude LaCour | 5/24/04 | $500,000.00 | Wire Transfer from Jive Network's Wachovia Bank account to Jude LaCour's Morgan Stanley Dean Witter account |
| Fifty-Seven | Jude LaCour Jeffrey LaCour | 7/19/04 | $25,000.00 | Check No. 4598 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |
| Fifty-Eight | Jude LaCour Jeffrey LaCour | 7/26/04 | $25,000.00 | Check No. 4661 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |
| Fifty-Nine | Jude LaCour Jeffrey LaCour | 8/2/04 | $25,000.00 | Check No. 4715 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |
| Sixty | Jude LaCour | 8/04/04 | $500,000.00 | Wire transfer from Jive Network's Wachovia Bank account to Jude LaCour's Morgan Stanley Dean Witter account |
| Sixty-One | Jude LaCour Jeffrey LaCour | 8/9/04 | $25,000.00 | Check No. 4729 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |
| Sixty-Two | Jude LaCour Jeffrey LaCour | 8/19/04 | $25,000.00 | Check No. 5277 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |
| Sixty-Three | Jude LaCour Jeffrey LaCour | 8/27/04 | $25,000.00 | Check No. 5335 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |

| | | | | |
|---|---|---|---|---|
| Sixty-Four | Jude LaCour Jeffrey LaCour | 8/31/04 | $25,000.00 | Check No. 5413 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |
| Sixty-Five | Jude LaCour Jeffrey LaCour | 9/10/04 | $25,000.00 | Check No. 5527 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |
| Sixty-Six | Jude LaCour Jeffrey LaCour | 9/14/04 | $25,000.00 | Check No. 5537 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |
| Sixty-Seven | Jude LaCour Jeffrey LaCour | 9/20/04 | $25,000.00 | Check No. 5603 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |
| Sixty-Eight | Jude LaCour Jeffrey LaCour | 9/28/04 | $1 million | Check No. 5671 payable to LaCour Medical drawn on Jive Network's Wachovia Bank account |
| Sixty-Nine | Jude LaCour Jeffrey LaCour | 10/27/04 | $700,000.00 | Wire transfer from Jive Network's Wachovia Bank account to Jeffrey LaCour's Colonial Bank account |
| Seventy | Jude LaCour Jeffrey LaCour | 10/27/04 | $300,000.00 | Wire transfer from Jive Network's Wachovia Bank account to Jeffrey LaCour's Colonial Bank account |
| Seventy-One | Jude LaCour Jeffrey LaCour | 10/28/04 | $700,000.00 | Wire transfer from Jive Network's Wachovia Bank account to Jeffrey LaCour's Colonial Bank account |
| Seventy-Two | Jude LaCour Jeffrey LaCour | 11/2/04 | $300,000.00 | Wire transfer from Jive Network's Wachovia Bank account to Jeffrey LaCour's Colonial Bank account |
| Seventy-Three | Jude LaCour | 3/24/05 | $2 million | Wire transfer from Jive Network's Wachovia Bank account to Jude LaCour's Morgan Stanley Dean Witter account |

27

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURES

1.     The allegations contained in Counts One through Seventy-Three of this

Indictment are hereby realleged and incorporated herein by reference for the purpose

of alleging forfeitures, pursuant to the provisions of Title 21, United States Code,

Section 853 and Title 18, United States Code, Section 982(a)(1).

2.     From their engagement in the violations alleged in Count One of this

Indictment, said violations being punishable by imprisonment for more than one year,

the defendants,

**JUDE LACOUR
JEFFREY LACOUR
HUDSEN SMITH
CHRISTOPHER TOBIN
AKHIL BARANWAL
ALEXIS ROMAN TORRES
ANDREW DESONIA
MARGARET MCINTOSH
a/k/a Margaret Fulmore
ABEL LAU
JAMES PICKENS
and
GEUNNET CHEBSSI**

shall forfeit to the United States, pursuant to Title 21, United States Code, Section

853(a)(1) and (2), any and all right, title, and interest they may have in:

   a.     Property constituting and derived from any proceeds the
          defendants obtained, directly or indirectly, as a result of such
          violations; and,

   b.     Property used and intended to be used in any manner or
          part to commit and to facilitate the commission of such
          violations.

28

3.    From their engagement in the violations alleged in Counts Two through

Thirty-Three of this Indictment, the defendants,

**JUDE LACOUR
JEFFREY LACOUR
HUDSEN SMITH
CHRISTOPHER TOBIN
AKHIL BARANWAL
ALEXIS ROMAN TORRES
ANDREW DESONIA
MARGARET MCINTOSH
a/k/a Margaret Fulmore
ABEL LAU
JAMES PICKENS
and
GEUNNET CHEBSSI**

shall forfeit to the United States, pursuant to Title 21, United States Code, Section

853(a)(1) and (2), any and all right, title, and interest they may have in:

> a.    Property constituting and derived from any proceeds the
>        defendants obtained, directly or indirectly, as a result of such
>        violations; and,
>
> b.    Property used and intended to be used in any manner or
>        part to commit and to facilitate the commission of such
>        violations.

4.    From their engagement in the violations alleged in Counts Thirty-Four

through Seventy-Three of this Indictment, the defendants,

**JUDE LACOUR
and
JEFFREY LACOUR**

shall forfeit to the United States of America, pursuant to Title 18, United States Code,

Section 982(a)(1), any and all right, title, and interest they may have in any property,

real or personal, involved in such offenses, or any property traceable to such property,

as a result of such money laundering violations.

     5.    Specifically, the property to be forfeited includes, but is not limited to, the

following:

        a.    A sum of money equal to at least $77,000,000 representing the amount of proceeds obtained as a result of the conspiracy charged in Count One, for which the defendants are jointly and severally liable. The value of the net recovery from the sale of any forfeited assets purchased with proceeds shall be credited toward this sum;

        b.    All seized funds contained in the following financial accounts:

            (1)    $3,511,517.42 from Jive Network, Inc.'s checking account # 2000015197809 at Wachovia Bank NA;

            (2)    $101,591.28 from Jive Network, Inc.'s certificate of deposit account # 012241191630861 at Wachovia Bank NA;

            (3)    $202,081.47 from Jive Network, Inc.'s certificate of deposit account # 012241211685160 at Wachovia Bank NA;

            (4)    $1,518,129.44 from Jive Network, Inc.'s money market account # 2000026078823 at Wachovia Bank NA;

            (5)    $272,654.63 from Discover Financial Services Inc., account # 601101312753138 in the name of Jude LaCour, d/b/a Prescriptionbilling.com;

            (6)    $19,910.87 from Telecheck check # 067304;

            (7)    $25,000.00 from Global Payment check # 1082504;

            (8)    $51,671.63 from Jive Network's checking account # 2000015197809 at Wachovia Bank NA;

            (9)    $98,681.17 from Jude LaCour's checking account # 1090004439738 at Wachovia Bank NA;

(10)    $2,734,305.20 from Jude LaCour's brokerage account # 445-031120 at Morgan Stanley Dean Witter;

(11)    $9,996.50 from checking account # 2000025958698 controlled by Jude LaCour and in the name of DTS Motorsport LLC;

(12)    $7,022.01 from checking account # 2000015789039 controlled by Jude LaCour and in the name of Daytona Toy Store LLC;

(13)    $196,086.25 from Jeffrey LaCour's checking account # 1000020489323 in the name of LaCour Medical, Inc. at SunTrust Bank;

(14)    $12,678.92 from Jeffrey LaCour's checking account # 0535071112457 in the name of Jeffrey LaCour Enterprises at SunTrust Bank;

(15)    $254,862.30 from Jeffrey LaCour's certificate of deposit account # 00008034907413 at Colonial Bank;

(16)    $254,506.53 from Jeffrey LaCour's certificate of deposit account # 00008034907611 at Colonial Bank;

(17)    $254,506.53 from Jeffrey LaCour's certificate of deposit account # 00008034907629 at Colonial Bank;

(18)    $254,506.53 from Jeffrey LaCour's certificate of deposit account # 00008034907637 at Colonial Bank;

(19)    $254,506.53 from Jeffrey LaCour's certificate of deposit account # 00008034907645 at Colonial Bank;

(20)    $439,379.51 from Jeffrey LaCour's account #7440126196 at Bank, Fifth Third;

(21)    $25,379.67 from Jeffrey LaCour's checking account # 8040591425 at Colonial Bank;

(22)    $192,649.52 from Jeffrey LaCour's certificate of deposit account # 00008034907397 at Colonial Bank;

31

           (23)    $1.3 million from Jive Network's Bank of N.T. Butterfield & Son Limited account number 9101256-MRCL-USD-A00 in Bermuda; and,

           (24)    $4,739.58(dividends) from Jude LaCour's brokerage account # 445-031120 at Morgan Stanley Dean Witter.

    c.    The following real property:

           (1)    real property located at 128 Pleasant Valley Drive, Daytona Beach, Florida 32114

    d.    The following internet domains:

           (1)    http://www.pillstore.com

           (2)    http://www.epharmacist.com

           (3)    http://www.cyberpills.com

           (4)    http://www.pillvalue.com

           (5)    http://www.planetpills.com

           (6)    http://www.instantpills.com

6.    If any of the property described above, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property, which cannot be divided without difficulty.

the United States of America shall be entitled to, and shall pursue, forfeiture of

substitute property under the provisions of Title 21, United States Code, Section 853(p),

directly and as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

Foreperson
Dominic Lorenti. JR

ROBERT E. O'NEILL
United States Attorney

By:
Karen L. Gable
Assistant United States Attorney

By:
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

33

**BOND RECOMMENDATION:**

AO 442 (Rev 5/85) Warrant for Arrest

# United States District Court

**SEALED**

MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

**WARRANT FOR ARREST**

v.

CHRISTOPHER TOBIN

CASE NUMBER: 6:08-cr-118-ORL-22KRS

**To: The United States Marshal
and any Authorized United States Officer**



YOU ARE HEREBY COMMANDED to arrest CHRISTOPHER TOBIN and bring him

forthwith to the nearest magistrate to answer an

☒ Indictment  ☐ Information  ☐ Complaint  ☐ Order of Court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him with conspiracy to distribute controlled substances and distribution of Schedule III and Schedule IV controlled substances.

In violation of Title 21, United States Code, Sections 846 and 841(a)(1).

SHERYL L. LOESCH
_____
Name & Title of Judicial Officer

_____
Signature of Issuing Officer

_____
(By) Deputy Clerk

Deputy Clerk
Title of Issuing Officer

5-8-08  Orlando, FL
Date and Location

Bail fixed at $ _____  by  _____
Name of Judicial Officer

**RETURN**

This warrant was received and executed with the arrest of the above-named defendant at
_____

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |